612 So.2d 219 (1992)
Grace BORNE
v.
Christine EDWARDS, et al.
No. 91-CA-2028.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1992.
*220 Allen H. Borne, Jr., New Orleans, for Grace Borne, plaintiff/appellant.
Shawn M. Bridgewater, Marshall G. Weaver, Henican, James & Cleveland, Metairie, for Christine Edwards, Roxana Chumney, Marley Fefer and Hollee Thomas, defendants and appellees.
Before BARRY, WARD and JONES, JJ.
WARD, Judge.
This is a suit by a lessor against her lessees for breach of a contract of lease. Lessees filed a reconventional demand for the return of their deposit and the first month's rent they paid. The trial court rendered judgment against the lessor, Ms. Borne, in the main demand and in favor of lessees on their reconventional demand. The trial court found that consent by the lessees to the lease obligations was procured by fraudulent misrepresentations which vitiated their consent. Based on these findings, the trial court rendered judgment rescinding the lease and ordering the lessor to return the deposit and the first month's rent, subject to a small credit. The trial court assessed all costs to Ms. Borne, including that of an expert witness.
We affirm, with the single exception of the assessment of the cost of the expert witness to Ms. Borne. The trial court's finding of fraudulent misrepresentation is supported by the record. We also agree with the trial court which found that in this case the fraudulent misrepresentations vitiated the consent of lessees to the lease.
In March 1988, Hollee Thomas, Christine Edwards, Roxana Chumney, and Marley Fefer (Appellees), all 18 year old out-of-state residents enrolled at Newcomb College, answered an ad placed by Grace Borne offering half of a duplex at 1121-1123 Hillary Street for rent. The ad claimed that the apartment was "ideal for students".
After viewing the apartment, the Appellees met with Mr. Allen Borne, Jr., Ms. Borne's son and a practicing attorney, to discuss the lease offer. The discussion soon focused on the question of safety in the neighborhood for four single women. The Appellees' parents also expressed their concern for the safety of their daughters through telephone conversations with Mr. Borne. After he assured both the Appellees and their parents that many women and students resided in the area, implying that it was safe, Mr. Borne executed a lease with the Appellees for the period between August 15, 1988 through August 15, 1989.
On August 16, 1988, when several of the Appellees arrived in New Orleans to move into their apartment, they discovered a strange man already residing in a back bedroom. After several unsuccessful requests to Ms. Borne and her son to evict *221 the man, the Appellees spent one night with the stranger in the apartment and then evicted him themselves the next day.
Only three days later, on August 19, just outside the apartment, three of the Appellees were robbed and assaulted by three men at gunpoint. Appellee Hollee Thomas suffered head injuries which required treatment at Touro Hospital. The Appellees immediately notified the police and Mr. Borne of the incident. The father of one of the Appellees informed Mr. Borne in writing of the Appellees' intent to vacate the Hillary Street apartment, enclosing the keys with the correspondence.
On September 19, 1988, Ms. Borne sued the Appellees for rent due for the entire term of the lease. The Appellees reconvened, seeking a rescission of the lease, damages, and attorney's fees. The trial court found that Mr. Borne made a material and fraudulent misrepresentation, perhaps by silence, that the neighborhood was safe for female college students. The court rescinded the lease contract and ordered the return of the Appellees' first month's rent and the security deposit, assessing to Ms. Borne the cost of an expert witness.
In the first of several assignments, Ms. Borne contends that the trial court erred in rescinding the lease on a finding of fraud by her or her son. She bases her argument on several grounds. First, she argues that there was insufficient proof of any intent to defraud by suppressing information that should have been disclosed. We disagree. The trial court's finding of fraud is supported by the evidence. That evidence showed that although both Ms. Borne and her son knew of the high incidence of crime in the neighborhood, Ms. Borne knew that the newspaper advertisement said the premises were ideal for students, and her son, who negotiated the lease, told the appellees and their parents that it was ideal for students and that many students resided in the neighborhood.
"Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." (emphasis added) La.C.C. Art. 1953.
However, not every fraudulent misrepresentation will vitiate consent.
Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La.C.C. Art. 1955.
We agree with the findings of the trial court that Mr. Borne's silence evasively answered questions about crime in the neighborhood and was sufficient to constitute fraud which vitiates consent because of error. The lessees and their parents' concern for crime and their safety was unquestionably just such a circumstance that influenced consent.
Second, Ms. Borne contends the Appellees knew of criminal activity in the area, that they had driven around the neighborhood prior to signing the lease agreement and were therefore aware of its character and problems. She also pointed to the fact that a previous tenant had informed them of a recent burglary on the other side of the premises. The trial court held that this would not relieve Ms. Borne or her son from their duty to truthfully inform the Appellees of their knowledge of the area's crime. The trial court did not err when it reached this conclusion, finding that this was to be the Appellees' first off-campus apartment and that they were young women who were not from Louisiana. The trial court correctly ruled that they relied upon the knowledge of Ms. Borne and her son to assess the safety of the Hillary Street neighborhood.
Additionally, Ms. Borne argues that the Appellees failed to properly allege fraud in their pleadings as required by C.C.P. Art. 865. She claims that the pleadings were insufficient to put either her and her attorney (her son) on notice that appellees contended their consent was induced by her or her son's fraud. The trial court correctly found that Paragraphs 10(c) and 13 of the complaint adequately allege fraud for the purposes of Article 865.
*222 Ms. Borne also argues that the appellees did not carry their burden of proof to show fraud by clear and convincing evidence, but this argument is clearly without merit in view of Louisiana Civil Code Article 1957.
Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence.
Next, Ms. Borne argues that under C.C. Art. 2703 the lessor has no duty to guarantee the lessee against disturbance caused by third persons not claiming any rights to the premises. Ms. Borne's focus is misplaced here. She is not a lessor who is being held liable for an assault by a third party. This incident simply points to the violent crime occurring in the area and underscores the falsity of Ms. Borne's statement that the neighborhood was "ideal for students".
Another of Ms. Borne's arguments is based on the principle that only present and pre-existing events are relevant for the determination of fraud. Farwell v. Milliken & Farwell, 145 So.2d 644 (La.App. 4 Cir.1963). Thus, Ms. Borne argues that since the assault upon the Appellees was an unforeseeable future event, that fraud was incorrectly found by the trial court. That argument incorrectly assumes that the robbery and assault were the events, but it was the misrepresentation at the time the lease was negotiated which is the event relevant to the issue of fraud in this case. In other words, the fraudulent misrepresentation was in not informing the Appellees of the crime in the neighborhood when Ms. Borne and her son had knowledge of criminal activity not only in the neighborhood, but also in Ms. Borne's other rental properties in the neighborhood. The assault was merely evidence that the area was unsafe.
In two other assignments, Ms. Borne claims the court erroneously admitted certain testimony, that of the Appellees' parents and of a witness who claimed to be an expert in security. In support of her position, Ms. Borne maintains that since the parents were not parties to the suit, their testimony as to conversations with Mr. Borne were irrelevant and should not have been allowed as evidence. This contention is simply without merit. The parents' testimony corroborated the statements made by the Appellees that assurances of safety were made by Mr. Borne prior to the signing of the lease. As for the testimony of Mr. Pendleton, the Appellees' security expert, Ms. Borne contends that this expert was not qualified to give an opinion on questions of relative neighborhood safety. Mr. Pendleton is a security consultant qualified in Louisiana and other states, on the state and federal level. While it is true that the court made the reservation that he was unqualified to compare different neighborhoods as to their levels of crime, Mr. Pendleton never attempted to do so. He merely reviewed the crime statistics of the Hillary Street area, assessed the crime rate, and pointed out specific criminal activities which occurred at several of the Borne properties. Ms. Borne even admits that Mr. Pendleton never compared the Hillary Street neighborhood with other uptown areas. Since Pendleton was more a fact witness than an expert witness we do not find error, except with relation to assessing his expert witness fee as a cost. Therefore, we reverse the portion of the lower court judgment assessing against Ms. Borne Mr. Pendleton's fee as a cost of this litigation. In all other respects, the judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART.